[Cite as *J.W. v. N.W.*, 2026-Ohio-3034.]

IN THE COURT OF APPEALS OF OHIO

TENHT APPELLATE DISTRICT

| | | |
|---|---|---|
| [J.W., Minor by and through Next of Kin, Q.W., mother], | : | |
| | : | |
| Petitioner-Appellee, | : | No. 25AP-586 |
| | : | (C.P.C. No. 25DV-1019) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| [N.W.], | | |
| | : | |
| Respondent-Appellant. | | |
| | : | |

D E C I S I O N

Rendered on August 6, 2026

**On brief:** *Babbitt & Dahlberg Law LLC*, and *C. Gustav Dahlberg*, for appellee. **Argued:** *C. Gustav Dahlberg*.

**On brief:** *Trolinger Law Offices, LLC*, and *Christopher L. Trolinger*, for appellant.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch

DINGUS, J.

{¶ 1} Respondent-appellant, N.W., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, granting the petition for a domestic violence civil protection order ("DVCPO") filed by Q.W., on behalf of her minor son, petitioner-appellee, J.W. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On May 27, 2025, Q.W., on behalf of her minor son, J.W., who turned five years old in January 2025, filed a petition for a DVCPO against appellant, her husband and the father of J.W. In addition to J.W., the petition identified Q.W. and their other minor

son, A.W., who turned four years old in June 2025, as needing protection. After holding an ex parte hearing on the same day, the trial court issued a temporary DVCPO order prohibiting appellant from having any contact with the three protected persons. The trial court also set the matter for a full hearing, at which the following evidence was adduced.

{¶ 3} Appellant testified that he was charged with committing domestic violence against J.W., and that the criminal court issued an order requiring him to stay away from that child. He pleaded not guilty to that offense. As of the date of the hearing, appellant had filed for divorce against Q.W.

{¶ 4} Faith Gallagher, a teacher at the preschool attended by J.W. and A.W., testified that, on May 22, 2025, appellant dropped J.W. off at her classroom. Once appellant left, J.W. was "very" upset and "came running to [Gallagher] crying." (June 23, 2025 Tr. Vol. I at 21.) When Gallagher asked what was wrong, "he said that his dad hit him in the head that morning." *Id.* Consistent with this statement, Gallagher could see a mark on the right side of J.W.'s head. Gallagher then contacted the preschool's director, Sara Miller, regarding the situation.

{¶ 5} Miller testified that Gallagher told her that J.W. said that his dad had hit him. Miller took J.W. aside and asked about his morning, and J.W. said that "[d]ad was mad and he hit me. He hit me hard." *Id.* at 25. She asked J.W. whether appellant previously hit him, and the child responded that "[y]eah, my dad hits me a lot. He's the mean guy. He's a mean guy in the house." *Id.* at 27. J.W. then "shut down" and did not want to discuss the issue further. *Id.* Miller contacted appellant, Q.W., and Franklin County Children Services ("FCCS"). She took a picture of J.W.'s forehead, which showed some swelling and a "cut-looking thing in it." *Id.* at 28. At J.W.'s request, Miller provided him with an ice pack for the injury. Miller also interviewed A.W. about what happened before the children arrived at the preschool. Over the objection of appellant's counsel, the trial court allowed Miller to testify that "[A.W.] said that [J.W.] went like this to him, which is just, like, a little X with his fingers, and it made dad mad so dad hit [J.W.] in the head." *Id.* at 35. He added that "dad gets really mean, gets really mad." *Id.* at 36.

{¶ 6} K.F., a neighbor of appellant and Q.W., testified that she had concerns about them because she repeatedly heard appellant screaming at the house, and because Q.W. had called and sent text messages, and at times fled to K.F.'s house, reflecting Q.W.'s

concern for her own safety. K.F. noted that this had "gotten worse over the last -- probably last year." (Tr. Vol. II at 45.) She even expressed concern regarding the safety of her own family because of appellant's behavior. K.F. and her husband had contacted the police about appellant, and they feared retaliation from appellant. Regarding Q.W., K.F. testified that she didn't "believe that [Q.W. is] safe at all" considering the "rage" she had observed from appellant. *Id.* at 47. After appellant was arrested for the May 22, 2025 incident, K.F. helped Q.W. develop a plan for her safety if appellant appeared, including the use of code words if necessary to alert others. K.F. summarized her concern about Q.W., stating "I mean, I just -- I do very much fear for [Q.W.]'s life." *Id.* at 54.

{¶ 7} Another neighbor of appellant and Q.W., P.N., testified that she had received telephone calls at 2:00 a.m. from a scared Q.W. In at least one of those calls, P.N. could hear appellant "beating on the door," and Q.W. wanted P.N. to stay on the line with her. (Tr. Vol. II at 61.) After FCCS was contacted, P.N. was scared of what appellant might do, and she helped Q.W. develop an emergency plan and provided her with safe house information. When asked why she was scared for Q.W.'s safety, P.N. answered by stating that on the telephone she could hear appellant "yelling and it sounded very scary . . . I heard her shaking through the phone. She came to my house with a go bag and her body was shaking all over when we hugged, like, shaking." *Id.* at 66.

{¶ 8} Q.W. testified that she requested a DVCPO because she wanted to protect herself and her two children from appellant. She fears for the safety of herself and her children. There were times when she locked herself in their bedroom because she did not feel safe around appellant. Q.W. described their relationship as being fine if she remained obedient, but if she expressed her opinion, "he had a hard time accepting it." (Tr. Vol. II at 100.) She had noticed that appellant's drinking had increased in the prior 6 to 12 months, making his behavior worse. Q.W. and appellant had 3 children together, but one tragically died from choking on food at a meal. Appellant viciously and wrongfully blamed Q.W. for the death of that child, calling her a "murderer" multiple times, and he said "he should spit on [her] f'ing face." *Id.* at 74, 118.

{¶ 9} On May 22, 2025, Q.W. was contacted by the preschool and informed that J.W. had arrived there with a cut and bruise on his forehead. After Q.W. picked up J.W. from preschool, J.W. told her that appellant had hit him. That evening, Q.W. watched a

video recording of the incident that occurred at their house. Appellant had installed a video camera in their living room a couple of years before the incident. The recording shows appellant verbally scolding J.W. for his conduct and twice forcibly striking the five-year-old child. At least one of those strikes caused J.W. to fall to the ground. Later in the evening, appellant admitted to striking J.W. Also that evening, A.W. came crying to Q.W., stating that appellant had just hit him, and she observed "three finger marks on" A.W.'s arm "as if [appellant] had grabbed him or twisted his arm hard." (Tr. Vol. II at 80, 81.) Generally, Q.W. believed that appellant was "spiraling out of control mentally[.]" *Id*. at 82.

{¶ 10} After the hearing concluded on June 24, 2025, the trial court issued a DVCPO against appellant for the protection of Q.W. and their two minor children, effective until December 31, 2026.

{¶ 11} Appellant timely appeals.

## II. Assignments of Error

{¶ 12} Appellant assigns the following three assignments of error for our review:

> [I.] The trial court erred and abused its discretion in the admission of hearsay evidence.
>
> [II.] The trial court grant of this CPO is against the manifest weight of the evidence.
>
> [III.] The trial court erred and abused its discretion in the scope and terms of the civil protection order.

## III. Discussion

{¶ 13} Appellant's first assignment of error contends the trial court erred in admitting hearsay evidence. In particular, appellant argues the trial court erred in admitting the preschool director Miller's testimony regarding the statements A.W. made to her about appellant hitting J.W. This assignment of error is not well-taken.

{¶ 14} The decision to admit or exclude relevant evidence rests within the sound discretion of the trial court. *Willis v. Road King Trucking, L.L.C.*, 2024-Ohio-5921, ¶ 19 (10th Dist.); *State v. Angus*, 2006-Ohio-4455, ¶ 16 (10th Dist.), citing *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. Absent a clear showing that the court abused its discretion in a manner that materially prejudices a party, a reviewing court will not disturb a ruling on the admission of evidence. *State v. Phelps*, 2015-Ohio-539, ¶ 27

(10th Dist.); *State v. Issa*, 2001-Ohio-1290 (2001). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 15} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). Unless a recognized exception applies, hearsay is inadmissible. Evid.R. 802. *State v. Clay*, 2010-Ohio-2720, ¶ 27 (5th Dist.), citing Evid.R. 802 through 804.

{¶ 16} Q.W. argues that the challenged statements were admissible under Evid.R. 803(1) or 803(2). Under Evid.R. 803, "present sense impressions and excited utterances are not excluded by the hearsay rule, even though the declarant is available as a witness." *State v. Given*, 2016-Ohio-4746, ¶ 25 (7th Dist.). Evid.R. 803(1) allows the admission of statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Pursuant to Evid.R. 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the rule against hearsay. With respect to present sense impressions, "the declarant need not be under 'stress of excitement caused by the event or condition,' as required for an excited utterance; rather, the primary focus is whether the statement was contemporaneous with the perceived event or condition." *State v. Crowley*, 2009-Ohio-6689, 2009 Ohio App. Lexis 5605, *13-14 (2d Dist. Dec. 18, 2009).

{¶ 17} It is unnecessary, however, to determine the admissibility of the challenged testimony, because even if the statements were inadmissible, there was no prejudice because this evidence was cumulative to other evidence. " 'The Ohio Supreme Court has held that the erroneous admission of inadmissible hearsay that is cumulative to properly admitted testimony constitutes harmless error.' " *State v. Harris*, 2023-Ohio-3994, ¶ 60 (10th Dist.), quoting *Peffer v. Cleveland Clinic Found.*, 2011-Ohio-450, ¶ 28 (8th Dist.), citing *State v. Williams*, 38 Ohio St.3d 346 (1988). *See Havanec v. Havanec*, 2008-Ohio-6966, ¶ 18 (10th Dist.) ("any error in admitting the hearsay [statements] was harmless because this evidence was already admitted through other witnesses"). Miller's testimony that A.W. told her that appellant had hit J.W. earlier in the day was cumulative to other

evidence. For example, both Miller and Gallagher, without objection from appellant, testified that J.W. reported that appellant had hit him. And, significantly, video evidence showed appellant twice forcibly striking J.W. Thus, any erroneous admission of Miller's testimony regarding A.W.'s statements about appellant hitting J.W. was harmless.

{¶ 18} Accordingly, we overrule appellant's first assignment of error.

{¶ 19} In appellant's second assignment of error, he contends that the trial court's issuance of the DVCPO was against the manifest weight of the evidence. This assignment of error lacks merit.

{¶ 20} Under R.C. 3113.31, a petitioner may seek a DVCPO to enjoin the respondent from further violence against the family or a household member. *I.S. v. I.S.S.*, 2024-Ohio-2083, ¶ 6 (10th Dist.), citing *Parrish v. Parrish*, 2002-Ohio-1623. In order to grant a DVCPO, the trial court must find that the petitioner has demonstrated, by a preponderance of evidence, that the petitioner or petitioner's family or household members are in danger of "domestic violence." *Downs v. Strouse*, 2006-Ohio-505, ¶ 11 (10th Dist.). Relevant to the instant case, R.C. 3113.31 defines "[d]omestic violence" as "[t]he occurrence of one or more of the following acts against a family or household member: (i) [a]ttempting to cause or recklessly causing bodily injury; [or] (ii) [p]lacing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code." R.C. 3113.31(A)(1)(a)(i) through (ii).

{¶ 21} An appellate court reviews a trial court's grant of a DVCPO to " 'determine whether sufficient, credible evidence supports a finding that the respondent had engaged in acts or threats of domestic violence.' " (Further quotation marks deleted and citation omitted.) *Fleckner v. Fleckner*, 2008-Ohio-4000, ¶ 15 (10th Dist.), quoting *Kabeer v. Purakaloth*, 2006-Ohio-3584, ¶ 7 (10th Dist.). Thus, we will not reverse the trial court's grant of the DVCPO as being against the manifest weight of the evidence so long as some competent, credible evidence goes to the essential elements of the case. *Id.*, citing *Kabeer* at ¶ 7. Moreover, if the evidence is susceptible to more than one interpretation, the appellate court must construe the evidence consistently with the trial court's judgment. *Id.*, citing *Kabeer* at ¶ 7.

{¶ 22} Here, competent, credible evidence supported the trial court's issuance of the DVCPO. Evidence reasonably demonstrated that appellant had engaged in acts or threats

of domestic violence as to the protected parties. The record contains video evidence showing appellant twice forcibly striking his five-year-old son, J.W., after verbally scolding him on May 22, 2025. Other evidence indicated that J.W. suffered a bruise or swelling as a result of one or both of those strikes. Later that day, a crying three-year-old A.W. told Q.W. that his father, appellant, had just hit him, and Q.W. observed what she believed to be markings on A.W.'s arm caused by unnecessary force. Q.W. also testified about appellant's recent increased anger and aggressiveness, and her related fear for her safety and the safety of her children. This fear intensified with appellant's physical violence towards A.W. and J.W. on May 22, 2025. Further, two of their neighbors testified that based on their own experience observing appellant's volatility—and based on information learned from Q.W. about his treatment of her—they were worried that something terrible would happen to Q.W. One of the neighbors observed Q.W. shaking from her fear of appellant. And because of Q.W.'s justified ongoing fear of imminent harm, the neighbors worked with Q.W. to develop a plan of action to help protect her. This evidence clearly met the requirements under R.C. 3113.31 for a DVCPO.

{¶ 23} Because the issuance of the DVCPO was supported by competent, credible evidence, we overrule appellant's second assignment of error.

{¶ 24} Appellant's third assignment of error contends that the trial court erred in defining the scope and terms of the DVCPO. He argues that the trial court abused its discretion in denying him any meaningful communication with his two children until December 31, 2026, a year and a half after issuance of the DVCPO. We are unpersuaded, and this assignment of error is not well-taken.

{¶ 25} "R.C. 3113.31 explicitly provides the trial court with the authority to craft a protection order tailored to the unique circumstances of the case." *J.S. v. L.S.*, 2022-Ohio-2485, ¶ 60 (10th Dist.). Thus, this court reviews the scope and terms of a DVCPO for an abuse of discretion. *T.C. v. M.C.*, 2025-Ohio-2995 (10th Dist.). *J.W. v. D.W.*, 2019-Ohio-4018, ¶ 15 (10th Dist.) (noting that the "scope and duration" of a DVCPO is within the sound discretion of the trial court). "[W]hen issuing a civil protection order where domestic violence exists, the court is prompted to consider not only the petitioner but also the petitioner's family or household members." (Internal quotations omitted.) *Woolum v. Woolum*, 131 Ohio App.3d 818, 824 (12th Dist. 1999), quoting *Felton v. Felton*, 1997-Ohio-

302, paragraph two of the syllabus. *See McBride v. McBride*, 2012-Ohio-2146, ¶ 25 (12th Dist.) ("The trial court did not err in issuing a CPO on behalf of E.M. in light of our previous holding that placing children in an environment where there is a substantial risk to their health and safety constitutes one form of domestic violence."). (Internal quotation marks deleted and citation omitted.) Therefore, our review of the scope and terms of the DVCPO is limited to whether the trial court abused its discretion.

{¶ 26} Appellant argues that the scope and terms of the DVCPO preclude him "from any meaningful relationship with the minor children and any involvement in their school and/or preschool/daycare for the next year and a half." (Appellant's Brief at 19.) Pursuant to the DVCPO, appellant shall not enter any school, daycare center, or childcare provider of the protected persons under the order; he shall not be present within 500 feet of those persons; and he shall not initiate or have any contact with those persons. He argues that these restrictions preventing him from having any interaction with his children are "far too long for such young children to maintain a meaningful relationship with their father." (Appellant's Brief at 20.)

{¶ 27} Under R.C. 3113.31, the maximum permissible duration of a DVCPO is five years. R.C. 3113.31(E)(3)(a). Here, the trial court ordered the DVCPO to terminate after one year and a half. Additionally, a DVCPO affecting custody of a minor child is " 'only a temporary order that lasts until the issue is litigated in a domestic relations or juvenile court.' " *State v. Scanes*, 2023-Ohio-1096, ¶ 35 (6th Dist.), quoting *Tabler v. Myers*, 2007-Ohio-6219, ¶ 14-15 (7th Dist.). Pursuant to R.C. 3113.31(E)(3)(b), an order protecting "family or household members" terminates "on the date that a court in an action for divorce, dissolution of marriage, or legal separation brought by the petitioner or respondent issues an order allocating parental rights and responsibilities for the care of children or on the date that a juvenile court in an action brought by the petitioner or respondent issues an order awarding legal custody of minor children." Alternatively, a trial court may modify or terminate a DVCPO under R.C. 3113.31(E)(8)(a).

{¶ 28} In the absence of such a modification or termination, the DVCPO at issue will remain in effect and precludes appellant's contact with his children (and Q.W.) until December 31, 2026. Appellant suggests that the duration of the DVCPO is unreasonable, and that it is detrimental to his children, protected persons under the order, not to have

interactions with him, their father.  But appellant is simply dissatisfied with the trial court's balancing of interests when, in exercising its discretion, it tailored the scope and terms of the DVCPO based on the facts and circumstances of this matter—which included evidence of appellant in anger twice forcibly striking his five-year-old son, causing injury to his head. When appropriate, a trial court may exercise its discretion and take necessary steps to protect children from harm, such as issuing an order barring contact between a parent and child pursuant to R.C. 3113.31.  And as set forth above, ample evidence supported the trial court's issuance of the DVCPO to protect appellant's children from him.  Under the facts and circumstances of this case, we find that the scope and terms of the DVCPO, preventing appellant from having any contact with the protected persons until December 31, 2026, were reasonable.

{¶ 29}  Therefore, we overrule appellant's third assignment of error.

## IV.  Disposition

{¶ 30}  Having overruled all three of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch.

*Judgment affirmed.*

BOGGS, P.J., and EDELSTEIN, J., concur.

———————————